

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*United States Attorney's Office*
*50 Main Street, Suite 1100*
*White Plains, New York 10606*

October 16, 2025

**BY ECF/EMAIL**
The Honorable Philip M. Halpern
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    ***United States v. Cameron McEwen*, 25 Cr. 193 (PMH)**

Dear Judge Halpern:

      The Government respectfully submits this letter in advance of the sentencing of the defendant, Cameron McEwen, scheduled for October 30, 2025, after having pleaded guilty pursuant to a plea agreement to receipt and distribution of child pornography. The defendant should be sentenced near the low end of the Guidelines range of 210 to 262 months' imprisonment and a lifetime term of supervised release to serve the purposes of sentencing. As discussed below, the requested sentence is necessary to protect the public from the defendant, a recidivist sexual predator, and is appropriate given the seriousness of the defendant's offense conduct.

**I.      Factual Background**

      In April 2023, local law enforcement in Alaska received a report involving communications on Snapchat—a social networking site—between a sixteen-year-old girl ("Minor Victim-1") and an individual using various Snapchat accounts, who was later identified as the defendant. Presentence Report ("PSR") ¶ 10. The defendant used multiple Snapchat accounts to threaten Minor Victim-1 and a second female victim who was not a minor ("Victim-2")[1] into sending him sexually explicit material.

      The scheme with respect to Minor Victim-1 and Victim-2 began on April 2, 2023. That day, Victim-2 told Minor Victim-1 she had a "boyfriend" on Snapchat, who was a user named "Cam." PSR ¶ 11. "Cam" told Victim-2 that another person—a Snapchat user named "X"— would assist her in opening up a bank account so that Victim-2 could be paid for sexually explicit images of herself. PSR ¶¶ 17-18. In fact, both "X" and Cam" were the same person—the

---

[1] The Government anticipates that both Minor Victim-1 and Victim-2 will attend the sentencing hearing—whether in person or virtually via teleconference. In addition, Victim-2 plans to submit a Victim Impact Statement and read the statement at sentencing, if the Court permits. The Government has not yet obtained Victim-2's Statement but will provide it to defense counsel and the Court as soon as it is received.

defendant. *Id.* ¶ 11.  Victim-2 provided "X" with her social security number and full name for purposes of setting up the bank account. *Id.* ¶ 17.

Then, "Cam" told Victim-2 that "X" had threatened to hack "Cam's" account and devices if he did not have a female Snapchat user send sexually explicit images to "X." *Id.*  Then, "X" began to threaten Victim-2 directly in multiple ways, demanding that she either send him content in which she was having sex with another person or that she add another female to the Snapchat chat would also send him sexually explicit material. *Id.*  "X"—that is, the defendant—said he would hurt "Cam" and Victim-2, and hack into Victim-2's phone and put her in debt, if Victim-2 did not comply. *Id.* ¶ 18.  Victim-2 sent sexually explicit images of herself to "X." *Id.*  "X" also said that he would release Victim-2's nude images to her friends and family if she did not do what he said. *Id.* ¶ 11.

The defendant did not only pose as "Cam" and "X."  He also communicated with Victim-2 via a third Snapchat account with the username "Fendii." *Id.* ¶ 18.  "Fendii"—that is, the defendant, pretended to be a different person who was in contact with "X" and purported to be trying to "help" Victim-2. *Id.*  In particular, "Fendii" told Victim-2 that if Victim-2 got a minor involved, the police would get involved—which would mean "X" would stop bothering her. *Id.* ¶ 19.  In fact, this was a ruse for the defendant to obtain sexually explicit material of a minor.

Then, Victim-2 asked Minor Victim-1 to add "X" on Snapchat to help Victim-2 satisfy "X"'s demands, which Minor Victim-1 did. *Id.* ¶ 12.  On or about April 2 and 3, 2023, defendant, posing as "X," directed Minor Victim-1 to take photos and videos of herself performing sexual acts. *Id.* ¶¶ 13, 16.  For example, the defendant instructed Minor Victim-1 to, among other things, (1) "[s]pit on ur boobs m rub them then suck urfinger. Sound on. N go fast"; (2) "[t]ake a vid on ur knees/ looking over yr shoulder. N stickur tounge out" and "[s]mack ur ass too like that" and (3) "[s]how ur pussy wit ur legs up rq again." *Id.* ¶ 16.

In response, on April 2 and 3, 2023, Minor Victim-1 produced and sent the defendant—*i.e.*, "X"—several sexually explicit images and videos of herself via Snapchat, including:

- A three-second video depicting Minor Victim-1 touching her genitals with her fingers while exposing her vagina to the camera;
- A three-second video depicting Minor Victim-1, naked from the waist down, moving her right hand repeatedly over her genitals while exposing her vagina to the camera;

The defendant, using the "X" Snapchat account, demanded that Minor Victim-1 add "Cam" on Snapchat. Id.  When Minor Victim-1 resisted, the defendant told her "[u]r gonna be minen his slut until u figure out how u want to end this." *Id.*  Minor Victim-1 then reported the conduct to law enforcement.

On April 24, 2024, law enforcement officers executed a search warrant at the defendant's residence and seized two of the defendant's cellphones pursuant to the search warrant. *Id.* ¶ 21.  Upon searching the defendant's cellphones, law enforcement found numerous Snapchat

conversations between the defendant and others in which the defendant engaged in a similar scheme as with Minor Victim-1 and Victim-2—*i.e.*, threatened others using multiple Snapchat accounts and posing as different people if they did not send him sexually explicit images of themselves. *Id.* ¶ 22. In particular, in April 2023, the defendant communicated with another individual—"Jayda"—who messaged the defendant "ya'll blackmailing [her] sister" who was only "15." The defendant responded "yeahh well the dude gonna do that shit tmr while she in school." "Jayda" further responded, "He said if she don't send he will post her nudes" to which the defendant responded, "he told me which is sad." *Id.* This conversation between the defendant and "Jayda" is consistent with the defendant blackmailing "Jayda's" sister, who is 15, for sexually explicit images which he received and then threatened to release to the public—just as he did with Minor Victim-1 and Victim-2.

## II.   Procedural History and Guidelines Calculation

On April 24, 2023, the defendant was charged by complaint in this District with one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and one count of extortionate interstate communications, in violation of 18 U.S.C. § 875(d). The defendant was presented and detained. On April 30, 2025, the defendant pleaded guilty to an Information pursuant to a plea agreement to one count of receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B) and (b)(1).

The plea agreement between the Government and the defendant sets forth the parties' agreement as to the sentencing range under the United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines"). The parties and the Probation Office agree that the Guidelines range is 210 – 262 months' imprisonment. *Id.* ¶ 93.[2] The Probation Office recommends a variance to 180 months' imprisonment—which is the mandatory minimum term of imprisonment here. *Id.* at 30.

---

[2] The defendant's criminal history points differ between the plea agreement and the PSR, though they both conclude that the defendant is in criminal history category III. The plea agreement assessed the defendant four criminal history points, while the PSR assessed him six criminal history points. The difference lies in two convictions. First, the plea agreement assessed the defendant two points for his 2022 conviction, whereas the PSR correctly assessed the defendant three points given that his probation was revoked for a technical violation in 2023. PSR ¶ 47. Second, the plea agreement did not assess the defendant any points for his 2018 conviction at the age of sixteen, which the Government was not aware of at the time the plea agreement was executed. *Id.* ¶ 43.

In addition, for the sake of clarity, both the plea agreement and the PSR provide that the defendant should be assessed two additional offense levels, pursuant to Guidelines § 2G2.1(b)(1)(B), because his conduct involved a minor who was between twelve and fifteen years old. *See* PSR ¶ 31. At various points, the PSR incorrectly states that Minor Victim-1 was fifteen, when she was actually sixteen years old. The parties have discussed the issue and intend to correct the errors about Minor Victim-1's age at the sentencing hearing. However, the Government's position is that Guidelines § 2G2.1(b)(1)(B) applies because of the fifteen-year-old victim who the defendant received naked images from, as described in paragraph 22 of the PSR.

### III.     Discussion

**1.  Applicable Law**

As the Court knows, the Sentencing Guidelines, while no longer mandatory, still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), courts must treat them as the "starting point and the initial benchmark" for sentencing proceedings, *id.* at 49.

After calculating the Guidelines range, the Court must consider the factors outlined in Title 18, United States Code, Section 3553(a), which include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall v. United States*, 552 U.S. 32, 50 & n.6 (2007).

In determining the appropriate sentence, the statute directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**2.  A Sentence Within the Guidelines Range is Sufficient But Not Greater Than Necessary to Serve the Purposes of Sentencing**

A sentence within the Guidelines range of 210 to 262 months' imprisonment, followed by a lifetime term of supervised release, is sufficient but not greater than necessary to comply with the purposes of sentencing under Section 3553(a). The requested sentence is necessary to protect the public from a dangerous predator and is appropriate given the seriousness of the defendant's offense conduct and the defendant's repeated predatory abuse of minors. These considerations strongly weigh in favor of the Government's proposed sentence.

The defendant is a manipulative sexual predator. He created multiple false online identities and used these multiple personas to aid in his deception, blackmailing girls and women into sending him sexually explicit material of themselves. He chose to prey on strangers and exploit their vulnerabilities while hiding behind the assumed safety of a screen. For example, when

speaking to Victim-2, he first pretended to be "Cam," her boyfriend, before creating a fake story about threats against "Cam" by "X." He then escalated to lodging direct threats against Victim-2, saying he, posing as "X," would hurt her and "Cam" and put her into financial trouble if she didn't send more explicit photographs. He then spread his web of lies and deception further by demanding that Victim-2 bring another individual into his scheme who he could demand sexually explicit material from. In fact, the defendant specifically told Victim-2 to find a minor to get involved, and made this demand under the guise of "helping" Victim-2 get away from "X." And, when the defendant communicated with Minor Victim-1, he made repeated demands for sexually explicit material from her and made the terrifying threat that she would be his "slut" until she could figure out how to end what was happening to her. Minor Victim-1 was scared enough to reach out to law enforcement, which demonstrates just how terrified she was of the defendant and what he might do to her. In light of these facts, and taking into consideration the defendant's age at the time of the offense (twenty-one), the Government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the harm that the defendant caused Victim-2 and Minor Victim-1, as well as other victims he similarly terrorized.

Second, the Government's recommended sentence is necessary to protect the public. The defendant has been previously convicted of multiple sex crimes involving young girls. He is a recidivist sexual predator who has been honing his coercive tactics for years and the Government's recommended sentence is necessary to protect the public from him using these tactics toward more victims.

In 2018, when the defendant was sixteen years old, the defendant was convicted of two counts of attempted coercion in the second degree in Middletown City Court. *Id.* ¶¶ 43-44. With respect to the first count, the defendant repeatedly threatened a twelve-year-old girl (the "2018 Victim") that he would release naked pictures of her if she did not engage in sex acts with the defendant. *Id.* ¶ 43. He also took a video, with 2018 Victim's permission, of her performing oral sex on him—but told her that he would show the video to others if she did not perform the same act again. *Id.* With respect to the second count, the defendant received naked pictures from multiple minor girls, ages eleven and twelve (including the 2018 Victim). *Id.* ¶ 44. The defendant then threated one of the girls that he would post her pictures on social media if she stopped sending him photos. *Id.*

In 2020, when the defendant was eighteen years old, he was convicted of criminal contempt in the second degree in Middletown City Court for failing to stay away from the 2018 Victim, who had an order of protection against him. *Id.* ¶ 46. Again, law enforcement's investigation revealed that the defendant threatened to release sexually explicit material of a minor girl (this time, a fifteen-year-old) if she did not have sex with him and his friends. *Id.* However, the defendant disputed threatening the 2018 Victim or that he intended to engage in sexual contact with her. *Id.* Then, in 2021, when the defendant was nineteen years old, he was arrested and convicted of rape in the second degree in Orange County Court for having sex the year prior with a fourteen-year-old girl. *Id.* ¶ 47.

The defendant's criminal history is a string of sex crime convictions in which the defendant repeatedly threatened, coerced, and blackmailed girls to get sexual gratification from them, either

through physical contact or sexually explicit material. A significant period of incarceration followed by a lifetime term of supervised release is necessary to ensure that the defendant does not continue to harm other women and girls.

## IV.    Conclusion

In light of the severity of the offense conduct and the defendant's prior criminal conduct, a sentence near the low end of the 210 to 262-month Guidelines range, followed by a lifetime term of supervised release, is sufficient but not greater than necessary to achieve the legitimate purposes of sentencing.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    */s/ Kathryn Wheelock*
Kathryn Wheelock
Assistant United States Attorney
Southern District of New York
(212) 637-2415